*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROLF L. LINDSTROM,

       *Plaintiff,*

WILLARD E. BARTEL and DAVID C. PEEBLES, administrators of the estate of ROLF L. LINDSTROM, deceased,

       *Plaintiffs-Appellants,*

  *v.*

A-C PRODUCT LIABILITY TRUST, et al.,

       *Defendants,*

A.W. CHESTERTON, COFFIN TURBO PUMP, INC., INGERSOLL-RAND COMPANY, WALWORTH COMPANY, THE ANCHOR PACKING COMPANY, COLTEC INDUSTRIES, GARLOCK SEALING TECHNOLOGIES, LLC, GOULDS PUMPS, INC., HENRY VOGT MACHINE CO., and JOHN CRANE, INC.,

       *Defendants-Appellees.*

No. 04-3751

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-13222—Dan A. Polster, District Judge.

Argued: June 8, 2005

Decided and Filed: September 28, 2005

Before: SILER and GIBBONS, Circuit Judges; LAWSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** John C. Cardello, JACQUES ADMIRALTY LAW FIRM, P.C., Detroit, Michigan, for Appellants. George F. Fitzpatrick, Jr., SWANSON, MARTIN & BELL, Chicago, Illinois, Matthew C. O'Connell, SUTTER, O'CONNELL, MANNION & FARCHIONE, Cleveland, Ohio, Holly N.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

Olarczuk-Smith, Eric Mann, GALLAGHER, SHARP, FULTON & NORMAN, Cleveland, Ohio, William F. Scully, Jr., WILLIAMS, SENNETT & SCULLY CO., Cleveland, Ohio, Stephen H. Daniels, McMAHON, DeGULIS, HOFFMAN & LOMBARDI, Cleveland, Ohio, for Appellees. **ON BRIEF:** John C. Cardello, Donald A. Krispin, JACQUES ADMIRALTY LAW FIRM, P.C., Detroit, Michigan, for Appellants. George F. Fitzpatrick, Jr., SWANSON, MARTIN & BELL, Chicago, Illinois, Matthew C. O'Connell, SUTTER, O'CONNELL, MANNION & FARCHIONE, Cleveland, Ohio, Holly N. Olarczuk-Smith, Eric Mann, Monica A. Sansalone, GALLAGHER, SHARP, FULTON & NORMAN, Cleveland, Ohio, Stephen H. Daniels, Evan J. Palik, McMAHON, DeGULIS, HOFFMAN & LOMBARDI, Cleveland, Ohio, William F. Scully, Jr., WILLIAMS, SENNETT & SCULLY CO., Cleveland, Ohio, Michael A. Pollard, BAKER & McKENZIE, Chicago, Illinois, Stephanie P. Manson, Walter J. Andrews, Paul E. Janaskie, HUNTON & WILLIAMS, McLean, Virginia, for Appellees.

---------------

## OPINION

---------------

JULIA SMITH GIBBONS, Circuit Judge.  Rolf L. Lindstrom, a merchant seaman, brought suit against numerous defendants seeking compensation for his mesothelioma, a disease he claims was caused by exposure to asbestos released from products manufactured by defendants-appellees. The district court granted summary judgment in favor of defendants-appellees Ingersoll Rand Company, Coffin Turbo Pump, Inc., Garlock Sealing Technologies, LLC, Henry Vogt Machine Company, and Goulds Pumps, Inc., but denied John Crane, Inc.'s summary judgment motion. Following a bench trial, the district court entered a verdict in favor of John Crane, Inc.  Willard E. Bartel and David C. Peebles, administrators of Lindstrom's estate, now appeal.

For the following reasons, we affirm the decision of the district court with respect to all of the defendants.

## I.

Lindstrom was employed from 1963 until 1994 as a merchant seaman.  He worked in the engine department as a licensed engineer aboard numerous vessels during this time.  In his work, Lindstrom was allegedly exposed to many pieces of equipment that contained asbestos.  Lindstrom was diagnosed with malignant mesothelioma of the peritoneum in October 1999 and died of this disease on June 15, 2003.  Willard E. Bartel and David C. Peebles were appointed as administrators of Lindstrom's estate and were substituted as plaintiffs.

Lindstrom filed a complaint in the Northern District of Ohio in January of 2003 against various defendants seeking compensation for the mesothelioma, a condition which he asserts he developed as a result of exposure to asbestos contained in defendants-appellees' products. Lindstrom's complaint listed claims of negligence under the Jones Act, 46 U.S.C. § 688 *et seq.*, unseaworthiness under maritime law, and products liability claims of design and manufacturing defects.  Only the products liability claims are at issue in this appeal.

The district court granted summary judgment in favor of Ingersoll Rand and Coffin Pump in an opinion dated May 2, 2003.  The district court granted summary judgment in favor of Garlock Sealing on May 7, 2003.  The district court granted summary judgment in favor of Goulds Pumps and Henry Vogt Machine Company, but denied John Crane, Inc.'s motion for summary judgment in an opinion dated May 19, 2003.  Lindstrom's claim against John Crane, Inc. proceeded to a bench trial which took place from February 18 through February 27, 2004.  On May 3, 2004, the district court entered a verdict in favor of John Crane, Inc.  Bartel and Peebles filed a notice of appeal from the district court's orders with respect to the above six defendants-appellees on May 27, 2004.

## II.

We review a district court's grant of summary judgment *de novo*. *Golden v. City of Columbus*, 404 F.3d 950, 954 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must review the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On an appeal from a judgment entered after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004). When the factual findings involve credibility determinations, we afford great deference to the district court's factual findings. *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999).

Plaintiffs in products liability cases under maritime law may proceed under both negligence and strict liability theories. Under either theory, a plaintiff must establish causation. *Stark v. Armstrong World Indus., Inc.*, 21 Fed. Appx. 371, 375 (6th Cir. 2001). We have required that a plaintiff show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered. *Id.* In addition, we have permitted evidence of substantial exposure for a substantial period of time to provide a basis for the inference that the product was a substantial factor in causing the injury. *Id.* at 376. "Minimal exposure" to a defendant's product is insufficient. *Id.* Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient. *Id.* Rather, where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Id.* (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at * 4 (6th Cir. April 25, 1991)). In other words, proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury.

Plaintiffs-appellants urge this court to reject the *Stark* approach to causation proof. We decline their invitation. The *Stark* reasoning permits a plaintiff, faced with a difficult task of establishing causation, to meet his burden through proof of substantial exposure and has proved workable in maritime asbestos products liability cases.

The plaintiffs-appellants also argue that the district court erred in its application of *Stark*. Plaintiffs-appellants argue that *Stark* stands for the proposition that in order to "withstand a motion for summary judgment, evidence of substantial asbestos exposure for a substantial period of time is required only if the evidence is entirely circumstantial." Because plaintiffs-appellants submitted an affidavit from an expert witness, plaintiffs-appellants maintain that their causation proof is not entirely circumstantial and that the above standard does not apply. *See id.* at 380 ("Had Stark presented expert testimony . . . , summary judgment might well have been improper . . . .").

While plaintiffs-appellants are correct that causation may also be established through direct evidence that a product to which a worker has been exposed is a substantial factor in causing injury, they are incorrect in their assertion that their affidavit enables them to survive summary judgment. The affidavit in question was prepared by Joseph Corson, M.D. With regard to the issue of whether defendants-appellees' products were a "substantial factor" in Lindstrom's mesothelioma, Corson's affidavit stated: "Each of Mr. Lindstrom's occupational exposures to asbestos aboard ship to a reasonable degree of medical certainty were [sic] a substantial contributing factor to his development of mesothelioma. The medical and scientific community cannot exclude any specific asbestos

exposure as to Mr. Lindstrom's mesothelioma." After reviewing this affidavit in considering the summary judgment motions of Ingersoll Rand and Coffin Turbo Pump, the district court stated:

> Dr. Corson does not specifically reference the product of any particular Defendant. Rather, he opines that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing Lindstrom's disease. If an opinion such as Dr. Corson's would be sufficient for plaintiff to meet his burden, the Sixth Circuit's "substantial factor" test would be meaningless. Accordingly, Dr. Corson's opinion is insufficient as a matter of law to get Lindstrom past summary judgment.

The district court correctly found the affidavit, which sought to base causation on any hypothetical exposure, however slight, to be insufficient to allow plaintiffs-appellants to avoid summary judgment in favor of Ingersoll Rand and Coffin Turbo Pump.[1] The affidavit does not reference any specific defendant or product, but rather states in a conclusory fashion that every exposure to asbestos was a substantial factor in Lindstrom's illness. The requirement, however, is that the plaintiff make a showing with respect to *each* defendant that the defendant's product was a substantial factor in plaintiff's injury, *see Stark*, 21 Fed. Appx. at 375 ("Commonly, [the substantial factor] standard is separately applied to each of the defendants."). As a matter of law, Corson's affidavit does not provide a basis for a causation finding as to any particular defendant. A holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion.

Plaintiffs-appellants next argue that the district court erred in granting summary judgment in favor of each of the defendants-appellees involved in this appeal. Plaintiffs-appellants also argue that the district court's ruling in favor of John Crane, Inc. should be reversed. We will examine the district court's decisions with respect to each of these defendants-appellants separately.

A. *Henry Vogt Machine Company*

The district court granted summary judgment in favor of Henry Vogt Machine Company based on a finding that plaintiffs-appellants had failed to produce evidence that Henry Vogt's products had caused Lindstrom's illness. In Vogt's answers to the interrogatories, Vogt acknowledged that the valves the company manufactured contained encapsulated asbestos packing and the company's gaskets were covered in metal and had chyrsotile asbestos encapsulated between each of the metal windings. Vogt also noted that the gaskets contained latex-filled asbestos manufactured by other suppliers.

In Lindstrom's May 3, 2000, deposition, he listed Vogt as one of the companies that manufactured valves aboard the vessels upon which Lindstrom had worked. Lindstrom did not, however, name Vogt as one of the companies that manufactured replacement valve packing containing asbestos to which Lindstrom was exposed on the ships.

Lindstrom also presented deposition testimony given by Horace George, with whom Lindstrom had served with on one ship, The Almeria Lykes. George stated in his deposition that Lindstrom commenced work aboard the ship four years after the ship was commissioned. George testified that generally, the shipping company, rather than the valve manufacturer, provided the replacement packing and gasket material. George named five manufacturers who provided packing materials that Lindstrom would have come in contact with during his tenure on the ship, none of which was Henry Vogt. George also testified that asbestos-containing and non-asbestos containing

---

[1]Because the district court was correct in this ruling, its decision not to consider the affidavit in connection with the other summary judgment motions was not error.

packings were used aboard the ship, but he could not visually distinguish packing containing asbestos from packing that was asbestos-free. George also testified that the packing generally needed to be replaced a couple of times per year. Based on this statement, coupled with the fact that Lindstrom boarded the ship four years after it was initially commissioned, the district court surmised that it would have been impossible for Lindstrom to have handled any original packing or gasket material attributable to Henry Vogt.

In his response to Henry Vogt's motion for summary judgment, Lindstrom filed an affidavit in which he stated, "I specifically recall numerous valves manufactured and/or supplied by Henry Vogt Machine Co. on board vessels upon which I served throughout my career" and "I specifically recall replacing the asbestos-containing packing materials and gaskets in working on Henry Vogt Machine Co.'s valves described above, many times throughout my career as a merchant mariner." Additionally, Lindstrom filed an affidavit from George, which stated that he specifically recalled numerous Henry Vogt valves aboard The Almeria Lykes and that he witnessed Lindstrom replacing asbestos-containing packing material and gaskets numerous times on those valves. The district court refused to consider these affidavits based on a finding that it was an inappropriate attempt by Lindstrom to create a factual issue by filing affidavits that contradict the earlier deposition testimony. In their appellate brief, plaintiffs-appellants ignore this ruling by the district court and discuss the information contained in these affidavits as if they are properly before the court. However, because the plaintiffs-appellants have failed to challenge the district court's ruling on the admissibility of these affidavits, they are precluded from relying on them on appeal.[2]

The district court's conclusion that there was insufficient information presented to survive summary judgment with respect to whether a Henry Vogt product was a substantial factor in Lindstrom's illness was correct , and thus we affirm the district court's grant of summary judgment in Vogt's favor. Based on the information properly before the district court at the time that the motion for summary judgment was filed, there was insufficient evidence to connect Lindstrom with any Henry Vogt product or to connect a Henry Vogt product with asbestos that caused Lindstrom's illness. Lindstrom almost certainly could not have handled the original packing or gasket material, and this fact compels the conclusion that any asbestos that he may have been exposed to in connection with a Henry Vogt product would be attributable to some other manufacturer. According to *Stark*, Henry Vogt cannot be held responsible for material "attached or connected" to its product on a claim of a manufacturing defect. *See Stark*, 21 Fed. Appx. at 381; *cf. Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 715 (5th Cir. 1986) ("The component part manufacturer is protected from liability when the defective condition results from the integration of the part into another product and the component part is free from defect."); *see also Stark*, 21 Fed. Appx. at 378 ("[A]n asbestos-containing product, even one with a warning label, is not inherently defective as a matter of law.").

B. *Goulds Pumps, Inc.*

The district court granted summary judgment in favor of Goulds Pumps, Inc. based on a finding that plaintiffs-appellants had failed to produce evidence that Goulds Pumps' products had caused Lindstrom's illness. When listing the manufacturers of the water pumps on board the various vessels on which he worked, Lindstrom mentioned Goulds, among others. However, when Lindstrom was asked which manufacturers' pumps were most prevalent, he stated, "It depends on what ship you went on. Some of them used Aurora pumps, some of them used Worthington pumps, it all depends." Lindstrom did not mention Goulds Pumps as one of the prevalent types of pumps. Lindstrom testified that the packing material used to repack the pumps contained asbestos.

---

[2] In any event, the district court was correct in ruling that Lindstrom's actions in filing affidavits that contradicted the earlier proffered testimony of Lindstrom and George was improper. *See Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984).

Lindstrom identified several companies that manufactured the replacement packing used in water pumps, none of which was Goulds Pumps. It does not appear that George ever specifically mentioned Goulds Pumps in his deposition. George testified that Lindstrom spent approximately ten percent of his time working with gaskets and packing. George also testified that the replacement packing material was primarily provided by the shipping company.[3]

The information before the district court was insufficient to create an issue of material fact regarding whether any Goulds Pumps product was a substantial factor in Lindstrom's illness. The information fails to establish a sufficient link between a Goulds Pumps product and Lindstrom or between the asbestos causing Lindstrom's illness and a Goulds Pumps product. The cursory treatment plaintiffs-appellants' brief affords their argument that the district court erred in granting summary judgment does not contain any viable reason that the district court's decision was incorrect. As a result, we affirm the district court's grant of summary judgment in favor of Goulds Pumps.

C. *Coffin Turbo Pump, Inc.*

The district court granted summary judgment in favor of Coffin Turbo Pump, Inc. based on a finding that plaintiffs-appellants had failed to produce evidence that Coffin Turbo Pump's products had caused Lindstrom's illness. Lindstrom testified that Coffin manufactured most of the feed pumps on the vessels upon which he worked. Lindstrom testified that new Coffin pumps do not come with any insulation and that Coffin did not send insulation at the time it delivered the pumps. Lindstrom stated that any insulation put on a Coffin pump was probably provided by the shipyard. Lindstrom also testified that the replacement gaskets were not Coffin products. Lindstrom further testified regarding graphite-coated packing rings on the pumps as well as the packing in the valve. Lindstrom stated that he replaced the original packing rings, which were manufactured by Coffin, "many times" and they usually slid right off and were not dusty. Lindstrom testified that the new rings tended to be dusty when they were being put on but stated that he did not know whether the dust contained asbestos. It is unclear from the record whether the replacement packing rings were manufactured by Coffin.

Lindstrom also testified that he worked on the asbestos packing in Coffin pumps in the valve stem many times. Lindstrom testified that he knew that the packing was asbestos packing because it was hot. Finally, Lindstrom testified that he replaced gaskets on the pump throttles approximately twelve times. Lindstrom testified that the replacement gaskets were not Coffin products. William Kammerzell, an individual with whom Lindstrom had worked aboard The Allison Lykes for various periods between 1989 and 1991, also testified regarding Lindstrom's exposure to Coffin products. Kammerzell testified that Coffin produced special packing made especially for their pumps. Kammerzell testified that he had observed Lindstrom repacking Coffin pumps. He testified that "asbestos products are everywhere on U.S. merchant vessels."

The information before the district court at the time of the summary judgment motion does not establish a question of material fact regarding the issue of whether a Coffin Turbo product was a substantial factor in Lindstrom's illness, and therefore, we affirm the district court's grant of summary judgment in Coffin Turbo's favor. The information presented establishes that the only asbestos-containing products, aside from the graphite-coated packing rings, to which Lindstrom was exposed in connection with any Coffin Turbo products were not manufactured by Coffin Turbo, but rather products from another company that were attached to a Coffin product. Coffin Turbo cannot

---

[3]The affidavits filed by Lindstrom following the motions for summary judgment, discussed *supra*, also contain statements from Lindstrom and George specifically identifying Goulds Pumps as prevalent on the ships. For the reasons stated above, we do not consider these affidavits in reviewing the district court's ruling.

be held responsible for the asbestos contained in another product. *See Stark*, 21 Fed. Appx. at 381; *Koonce*, 798 F.2d at 715.

With respect to the graphite-coated packing rings, Lindstrom testified that the original rings on the product were manufactured by Coffin Turbo and that the packing rings contained asbestos. Lindstrom also testified that the rings "slid[] right off" and were not dusty. This court has held that in order to hold a defendant liable in an asbestos case, the plaintiff must show, at a minimum, exposure to asbestos dust. *Anjeski v. Acands, Inc.*, No. 89-1571, 1990 WL 58191, at * 5 (6th Cir. May 7, 1990). Lindstrom testified that the replacement packing rings were dusty; however, it is not clear that the replacement rings were Coffin Turbo products, and further, Lindstrom did not know whether the dust on the replacement rings contained asbestos. It is therefore not reasonable to infer from Lindstrom's testimony that he was exposed to asbestos dust from the Coffin Turbo packing rings, and thus, he cannot show that the rings were a substantial factor in his illness.

D. *Ingersoll Rand Company*

The district court granted summary judgment in favor of Ingersoll Rand Company based on a finding that plaintiffs-appellants had failed to produce evidence that Ingersoll Rand's products had caused Lindstrom's illness. Lindstrom testified that Ingersoll Rand manufactured most of the air compressors on the ships on which Lindstrom worked during his lifetime. Lindstrom testified that sheet packing containing asbestos was used with air compressors. He stated that he personally used sheet packing with water pumps, steam joints, and valves, but it is unclear whether he dealt with sheet packing in connection with an air compressor. Lindstrom did not testify that Ingersoll Rand was a manufacturer of the sheet packing. Lindstrom also testified that Ingersoll Rand provided replacement gaskets in kits and that these gasket kits did not have asbestos in them. George testified that Ingersoll Rand manufactured pumps, but he was unable to remember whether any Ingersoll Rand product was present upon The Almeria Lykes, the one ship on which he and Lindstrom served together.

The information before the district court at the time of the summary judgment motion was insufficient to create any question of material fact with regard to the question of whether an Ingersoll Rand product was a substantial factor in Lindstrom's illness. Lindstrom failed to identify any link between an Ingersoll Rand product and any product containing asbestos with which he came in contact. Even if Lindstrom's testimony is sufficient to establish that he came in contact with sheet packing material containing asbestos in connection with an Ingersoll Rand air compressor, Ingersoll Rand cannot be held responsible for asbestos containing material that it was incorporated into its product post-manufacture. *See Stark*, 21 Fed. Appx. at 381; *Koonce*, 798 F.2d at 715. Lindstrom did not allege that any Ingersoll Rand product itself contained asbestos. As a result, plaintiffs-appellants cannot show that an Ingersoll Rand product was a substantial factor in Lindstrom's illness, and we therefore affirm the district court's grant of summary judgment in Ingersoll Rand's favor.

E. *Garlock Sealing Technologies, LLC*

The district court granted summary judgment in favor of Garlock Sealing Technologies, LLC based on a finding that plaintiffs-appellants failed to produce evidence that Garlock Sealing's products had caused Lindstrom's illness. Garlock Sealing conceded that it manufactured asbestos-containing as well as non-asbestos containing products. Lindstrom did not identify Garlock as a manufacturer of sheet packing material and did not identify any exposure to asbestos in connection with a Garlock Sealing product. George testified in his deposition that he recalled seeing Garlock products on The Almeria Lykes. However, George testified that he was not able to distinguish Garlock products, or any product, for that matter, which contains asbestos from those that do not. Similarly, Kammerzell at first stated that he was "almost certain" that the Garlock sheet packing

contained asbestos, but then admitted that he did not know whether all of the Garlock sheet packing material on The Allison Lykes was asbestos-containing, though he stated that some of it contained asbestos. Kammerzell also stated that he was incapable of visually distinguishing between Garlock products that contained asbestos and those that did not.

Lindstrom did not create an issue of material fact such that he could properly withstand Garlock Sealing's summary judgment motion. While Kammerzell stated that some of the Garlock sheet packing contained asbestos and Garlock itself admitted production of asbestos-containing products, this evidence is insufficient to raise an issue of material fact. To withstand the summary judgment motion, Lindstrom had to produce evidence that this asbestos-containing product was a substantial factor in his illness. Because he did not specifically testify regarding Garlock at all, and his other two deponents admitted that they could not tell whether any sheet packing material handled by Lindstrom contained asbestos, the district court properly granted summary judgment in Garlock's favor. *See Stark*, 21 Fed. Appx. at 376 (mere showing that manufacturer's asbestos-containing product was on the premises of plaintiff's workplace insufficient for liability to attach to defendant); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986) (same); *Roberts v. Owens-Corning Fiberglas Co.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989) (same).

F. *John Crane, Inc.*

With respect to defendant-appellant John Crane, Inc., the district court found, following a bench trial, that plaintiffs-appellants had failed to meet the burden of proving that John Crane's products caused Lindstrom's illness. In so holding, the district court relied on the unrebutted testimony of John Crane's experts. This expert testimony established that (1) John Crane products do not release more than background levels of asbestos, and (2) release of quantities of asbestos fibers below background levels are not dangerous. Plaintiffs-appellants do not challenge any aspect of the district court's factual findings.

Plaintiffs-appellants first argue that, in applying *Stark*, the district court used the wrong legal standard in determining whether John Crane, Inc. was liable. Plaintiffs-appellants argue that the *Stark* standard, which requires the plaintiff to show a substantial exposure to a particular defendant's product for a substantial period of time, is only appropriate where the plaintiff relies on circumstantial evidence alone. However, plaintiffs-appellants fail to articulate a standard that they claim is more appropriate, saying only that "[o]nce the mesothelioma is diagnosed, it is impossible to rule out any of Mr. Lindstrom's exposures as being substantially contributory." Their argument appears to be that a showing of any level of asbestos exposure attributable to John Crane's products was sufficient for the court to have entered a judgment in their favor.

We reject plaintiffs-appellants' argument on this point. The district court did not use the wrong standard in reviewing plaintiffs-appellants' products liability claim. The *Stark* opinion notes that expert testimony is not required. 21 Fed. Appx. at 376. Plaintiffs-appellants apparently interpret this statement to mean that where expert testimony is offered, a plaintiff is no longer required to show substantial exposure. The *Stark* opinion and general logic may suggest that, where an expert witness can testify unequivocally that a defendant's product was the source of the illness, a plaintiff does not need to rely on proof of substantial exposure to establish causation. In this case, however, plaintiffs-appellants presented no such expert. In fact, their only expert who tested John Crane's products failed to measure the amount of asbestos fibers released in the air from the products. Thus, plaintiffs-appellants' theory of liability does not fit within any possible exception to *Stark*. The district court properly applied the *Stark* reasoning.

Plaintiffs-appellants also claim that the district court erred in failing to address their strict liability and failure to test theories. Plaintiffs-appellants' argument that the district court failed to address their strict liability claim is simply wrong; the district court considered and rejected this

claim in its opinion. Plaintiffs-appellants cite no law in support of their failure to test theory; rather, they cite cases concerning a failure to warn theory. Indeed, plaintiffs-appellants do not appear to have put forth any argument regarding a "failure to test" theory before the district court. The district court considered and correctly rejected plaintiffs-appellants' failure to warn theory in its opinion as well. Thus, plaintiffs-appellants' arguments regarding the district court's ruling in favor of John Crane, Inc. are unavailing and we therefore affirm the district court's decision.

## III.

For the foregoing reasons, we affirm the district court's rulings with respect to all defendants.