**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0135n.06
Filed: February 16, 2007

**No. 06-1130**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **CITY OF DETROIT**, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **TXU ENERGY RETAIL COMPANY, L.P., f/k/a** | ) | **M E M O R A N D U M** |
| **TXU ENERGY SERVICES, and SEMINOLE** | ) | **O P I N I O N** |
| **ENERGY SERVICES, L.L.C.**, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     SUHRHEINRICH, SUTTON and McKEAGUE, Circuit Judges.

**PER CURIAM.** This action grows out of a five-year natural gas supply contract, entered into in April 2000. For three years, both defendant supplier, TXU Energy Retail Company, L.P. ("TXU"), and purchaser, City of Detroit, performed under a common understanding of the contract. Then the City discovered contract language suggesting it had been paying TXU more than it was obligated to under the contract. The discrepancy concerned whether TXU was required simply to deliver natural gas to the City's local distribution company, Michigan Consolidated Gas Company ("MichCon"), at the City Gate Valve ("Citygate"), or was additionally responsible for MichCon's costs of further transporting the gas to end-user facilities within the City. Convinced that the contract language supported the latter construction, the City began withholding a portion of its

monthly payments and brought suit to recover past overpayments. TXU asserted a counterclaim for reformation of the contract, alleging the inconsistency between the subject contract language and what had been the parties' prevailing understanding was the product of mutual mistake. The district court conducted a bench trial and awarded judgment to TXU and against the City. On appeal, the City argues the district court erred by considering extrinsic evidence to determine the parties' intent instead of simply enforcing the contract's plain language, and by improperly weighing the evidence. Having carefully reviewed the district court's opinion as well as its order denying the City's motion to alter or amend the judgment, we find no error and therefore affirm the judgment.[1]

**I**

On appeal from a judgment entered after a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Factual determinations will be deemed clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. Rapanos*, 376 F.3d 629, 634 (6th Cir. 2004). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. (quoting *Anderson v. City of Bessemer City*, 470 U.S.

---

[1]In 2003, appellee Seminole Energy Services, L.L.C. became successor in interest to appellee TXU Energy Retail Company, L.P. In this memorandum opinion, both defendants-appellees, whose interests are indistinguishable for purposes of this appeal, are referred to collectively and interchangeably as "TXU."

564, 573-74 (1985). When the factual findings involve credibility determinations, the district court's

findings are entitled to "great deference." *Lindstrom*, 424 F.3d at 492.

## II

The district court properly denied the City's motion for summary judgment and admitted

extrinsic evidence of the parties' intent before adjudicating the parties' respective claims. The parol

evidence rule does not bar consideration of extrinsic evidence in this case for two reasons. First, the

rule does not apply to a claim for reformation of the contract based on mistake. *See Scott v. Grow*,

301 Mich. 226, 239 (1942). When an instrument is claimed, by mistake of the draftsman or

scrivener, not to accurately reflect the agreement of the parties, the question whether such a mistake

was made is open to parol evidence. *Id*. at 239-40.

Moreover, the fact that the terms of the instant contract are far from clear and unambiguous

is a second reason why the parol evidence rule does not bar consideration of extrinsic evidence in

this case. Although the City correctly argues that the Exhibit "A" definition of "Delivery Point(s)"

is seemingly clear in isolation, determining whether the term accurately reflects the parties' intent

requires review of the contract as a whole. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459,

467 (2003); *City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). If two

provisions of the same contract irreconcilably conflict with each other, the language of the contract

is ambiguous. *Klapp*, 468 Mich. at 467. If a contract is ambiguous, a question of fact regarding the

parties' intent is presented, which requires resort to extrinsic evidence, such as evidence of the

parties' statements and conduct and past practices. *Id*. at 469-70.

Here, review of the sales contract as a whole reveals several provisions at odds with the Exhibit "A" definition of "Delivery Point(s)." In particular, § 4a indicates that the City was to bear responsibility for the transportation of gas "*from* the Delivery Point(s)." (Emphasis added.) If the delivery points to which TXU was responsible for arranging and paying for transportation were intended to be the City's facility burner tips, per Exhibit "A," there would be no further local transportation for which the City could be responsible. Similarly, § 4b deals with penalties assessed to the City by MichCon in connection with local distribution of gas. If TXU were responsible for local transportation to the facility burner tips, there would be no reason for the City to be assessed penalties by MichCon.

These internal inconsistencies in the terms of the contract thus represented a second justification for the district court's consideration of extrinsic evidence in determining the intent of the parties. It follows that the district court did not err by refusing to enforce the contract as a matter of law without considering extrinsic evidence of the parties' actual intent.

### III

"Back of nearly every written instrument lies a parol agreement, merged therein; but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake." *E.R. Brenner Co. v. Brooker Eng'g Co.*, 301 Mich. 719, 723 (1942) (quoting *Lee State Bank v. McElheny*, 227 Mich. 322, 327 (1924)). The parties agree that TXU had the burden of demonstrating by clear and convincing evidence that the contract should be

reformed in order to carry out the true agreement of the parties. *Id.*; *Dingeman v. Reffitt*, 152 Mich. App. 350, 358 (1986).

In support of its claim for reformation, TXU presented abundant evidence tending to show that both parties actually intended that TXU would be responsible for delivering the natural gas to Citygate and that the City would remain responsible for the costs of local transportation through separate contracts with MichCon. This evidence consisted of statements and conduct of the parties prior to execution of the contract, during negotiation of the contract, and during performance of the contract. After a three-day bench trial, the district court was satisfied that this evidence was clear and convincing. Based on its explicit and well-substantiated fact-findings, the district court reached the conclusion that at all times pertinent to construction of the contract, both TXU and the City intended that the "Delivery Point" under the contract be the MichCon Citygate. The Exhibit "A" definition, which is at odds with this conclusion, was held to be the result of a mistake of the parties subject to retroactive reformation.

On appeal, the City does not specifically attack the district court's dispositive findings, but challenges the district court's weighing of the evidence. The City relies on the testimony of Scott Hamilton, who negotiated the contract for the City, and Mark Petty, the City's Public Lighting Executive, who signed the contract on behalf of the City.

In the face of the overwhelming evidence cited by the district court, Hamilton's testimony is insubstantial. He testified at trial that, as far as he was concerned, the "written contract was a burner-tip delivery contract." Yet, even if this testimony accurately reflects Hamilton's understanding, there is no evidence that he communicated his personal understanding to anyone

representing TXU in the negotiations. Further, the integrity of Hamilton's testimony is called into question by substantial evidence: (1) that he communicated quite a different understanding of the contract to other City officials; and (2) that he knew the City was continuing to pay MichCon separately for its transportation costs, yet did not object. Similarly, Petty's testimony regarding his understanding of the contract is equivocal. It does not even suggest that the parties reached a meeting of the minds on transfer of responsibility for MichCon's local distribution costs from the City to TXU.

In comparison with the overwhelming evidence supporting the conclusion that the Exhibit "A" definition of "Delivery Point(s)" does not reflect the actual agreement of the parties, the contrary testimony of Hamilton and Petty amounts to no more than a mere scintilla of evidence. It hardly impugns the district court's determination that TXU's claim for reformation of the contract is supported by clear and convincing evidence. Moreover, in giving little weight to Hamilton's and Petty's professed understandings of the contract, the district court necessarily found their testimony to be lacking in credibility. The district court's credibility assessment is entitled to "great deference." *Lindstrom*, 424 F.3d at 492. The City has presented no persuasive reason to second-guess the district court's assessment.

The City contends that the best evidence of its intent is represented by the City Council's approval of the contract as written. Yet, there is no evidence apart from the language of Exhibit "A" itself, that any Council member understood the contract language to effect a transfer of the City's liability for MichCon's local transportation costs to TXU. As the district court observed, to the extent the extrinsic evidence teaches anything about the Council's intent, it does not favor the City's

argument. The Council's repeated approval of local distribution contracts with MichCon, during the period of the instant sales contract with TXU, evidences the Council's continuing understanding that the City remained liable to MichCon for the costs of local distribution.

Viewing the record as a whole leads to the settled conclusion that neither party intended that TXU would assume liability for MichCon's local transportation costs. Over the course of the five-year contract period, these costs were estimated to amount to a total of approximately $20 million. The notion that the parties reached a meeting of the minds on such a substantial transfer of liability, being contrary to both parties' pre-contract practice and course of dealings, and contrary to the understanding manifested by both parties' course-of-performance conduct, without even negotiating it is simply unbelievable. The City has fallen far short of demonstrating that the district court's judgment is marked by any error of fact or law. The judgment reforming the contract must therefore be affirmed.[2]

**IV**

Under the City's Prompt Payment Ordinance, where payment owed to a vendor is past due, and the delay is attributable to a City department or agency, the department or agency is required to

---

[2]The City also argues that the district court erred by denying *its* request (in its motion to alter or amend the judgment) to reform the contract price. Yet, as the district court observed, the record reveals no dispute regarding the agreed contract price. The written sales contract accurately reflects the agreed contract price of $3.45 per MMBtu of natural gas. Even assuming such a claim for reformation of the contract was properly before the district court, the City clearly failed to demonstrate by clear and convincing evidence that reformation of the contract price was warranted to carry out the true agreement of the parties. In denying relief, the district court did not abuse its discretion.

pay the vendor interest on the amount past due at the rate of ½ percent of the amount past due for the first month and one percent for each succeeding month. Pursuant to this ordinance, the district court ordered the City to pay TXU interest on all funds improperly withheld by the City since April 2003. In this decision, too, we find no error.

The district court held the "outstanding disagreement" exception to the penalty interest requirement did not apply because the extrinsic evidence of the parties' actual intent demonstrated the existence of a contractual agreement incongruous with the asserted "outstanding disagreement." In other words, the district court ordered reformation of the contract because the court was convinced, based on the overwhelming and practically unrefuted evidence, that the written contract, *as reformed*, genuinely represented the actual agreement reached by the parties in April 2000. Integral to this conclusion is the implicit judgment that the City's withholding of payments, beginning in 2003, based on a definition which both parties had been oblivious to for three years, was not based on a bona fide or legitimate disagreement.

Neither the City's arguments nor the record taken as a whole present any reason for this court to second-guess the district court's determination that the City's position was not a legitimate reason for the withholding of payments. The district court, during the course of a three-day bench trial, had ample opportunity to evaluate the positions of the parties and their respective equities. Its assessment appears to be entirely appropriate and there is no persuasive reason to disturb the award of penalty interest.

**V**

Accordingly, the district court's judgment is **AFFIRMED** in all respects on the basis of the reasoning set forth in its opinion and order. It follows that the stay issued by this court on January 11, 2007, must be and is **VACATED.** The case is **REMANDED** to the district court for completion of post-judgment proceedings.