[No. H014019. First Dist., Div. Five. June 24, 1996.]

CLARK EDWARDS et al., Plaintiffs and Appellants, v.
A.L. LEASE & COMPANY, INC., et al., Defendants and Respondents.

[No. H014029. First Dist., Div. Five. June 24, 1996.]

JAN MARSHALL et al., Plaintiffs and Appellants, v.
AMFAC DISTRIBUTION CORPORATION et al., Defendants and
Respondents.

## COUNSEL

David M. Birka-White, Lieff, Cabraser, Heimann & Bernstein, Richard M. Heimann, Robert J. Nelson and Christine J. Anderson for Plaintiffs and Appellants.

R. Lawrence Bragg, Roberta Rusk, Robinson & Wood, David S. Henningsen, Folger & Levin, Thomas P. Laffey, Katharine Livingston, Vogl & Meredith, John P. Walovich, Williams, Romanski, Polverari & Skelton, Thomas J. Burns, Pillsbury, Madison & Sutro, Gary H. Anderson, Clapp, Moroney, Bellagamba, Davis & Vucinich, Mark T. Guerra, Bledsoe, Cathcart, Diestel, Livingston & Pedersen, Robert K. Phillips, Shahab E. Fotouhi, Carrick & Dale, Daphne D. Golliher, Brian L. Thompson, Arthur Paul Berg, Willoughby, Stuart & Bening, Ronald J. Cook, Russell, Kazan, Brenner & Mallett, Philip Y. Kazan, Bradley, Curley & Asiano, Kevin P. McCarthy, David A. Sofaer, McNamara, Houston, Dodge, McClure & Ney, Michael J. Ney, Brendan J. Dooley, Greve, Clifford, Wengel & Paras, Edward T. Clifford, Craig L. Scott, Langley, Lamberto, Kreger & Moher, William F. Horsey, Jr., Terry D. Graff, Borton, Petrini & Conron, Sharon Glenn Pratt, Porter Scott, Weiberg & Delehant, Carl L. Fessenden, Rohlff,

Howie & Frischholz, Nancy L. Peterson, Yale W. Rohlff, Jones, LaMore, Brazier & Riddle, John E. Riddle, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Todd E. Thompson, Morton, Lulofs & Allen, Larry E. Lulofs, Lisa S. Klotchman, Glaspy & Glaspy, Paul C. Glaspy, Paul S. Rosenstein, Robert W. Barker, Lariviere & Dickerson, Glen M. Dickerson, Steefel, Levitt & Weiss, Barry W. Lee, William L. Lowery, Marron, Reid & Sheehy, Michael R. Marron and Miriam E. Hiser for Defendants and Respondents.

## OPINION

**HANING, J.**—In this appeal we are asked to apply the market share theory of liability of *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061] (*Sindell*), or the alternative theory of liability of *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91] (*Summers*) to wholesalers of defective residential drain pipe where the manufacturers are known, but where the plaintiffs in this product liability action for property damage allegedly cannot determine which wholesaler distributed the pipe that was installed in their homes. We affirm.

### BACKGROUND

This appeal is taken from a judgment of dismissal after demurrers to appellants' third amended complaints were sustained without leave to amend. The established standard of appellate review requires us to accept all material facts properly pleaded as true and accept those subject to judicial notice, and we report them accordingly. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Appellants are individual homeowners whose homes have been damaged by defective acrylonitrile-butadiene-styrene (ABS) drain, waste and vent pipes manufactured by Centaur Mfg., Inc., (Centaur) and Phoenix Extrusion Company (Phoenix).[1] Properly made ABS pipe must be manufactured from new, as opposed to recycled plastic, or it will fail. During an approximately two-year period, Centaur and Phoenix manufactured ABS pipe with recycled plastic. Defective components and recycled plastic from which the pipe was manufactured during this period were supplied to Centaur and Phoenix by

---

[1]The relationship between Centaur and Phoenix is not clear. Phoenix is sometimes alleged as "Phoenix Extrusion Company doing business as [or also known as] Centaur Marketing, Inc.," and is also alleged as the successor of Centaur. The complaint of plaintiffs Edwards and Albright alleges that Centaur filed for bankruptcy. Plaintiffs Marshall, Carter and Abad allege that "Centaur is no longer in operation." For all practical purposes, however, we appear to be dealing with a single manufacturing operation in these actions.

two known component manufacturers. Centaur and Phoenix sold the defective pipe to wholesalers, who resold it to the plumbing contractors that installed it in plaintiffs' homes. The pipe was installed during the original construction of plaintiffs' homes between 1985 and 1988, and clearly designates the manufacturer as either Centaur or Phoenix. Respondents are a group comprising "approximately 100 [percent]" of the wholesalers of the defective pipe.

Appellants filed an action for property damage against the manufacturers, the component suppliers, an industry overseer, and respondent wholesalers. Appellants' amended complaints allege generally that although they can identify the manufacturer of the defective pipe installed in their individual homes, the suppliers of the defective components from which the pipe was manufactured, and the industry overseer, they cannot determine which wholesaler(s) distributed the pipe to the plumbing contractors that installed it in their homes, and have exhausted all reasonable efforts to do so. The nature of the defect is such that it may not manifest itself and cause harm for several years after installation; and the lapse of time, the fact that many plumbing contractors are no longer in business, and the attendant lack of records make it virtually impossible to trace the wholesaler(s) of the defective pipe. Appellants' action against respondents is based solely on strict liability under either a *Sindell* or *Summers* theory.

The trial court sustained the respondents' demurrers and dismissed the action against them, ruling that neither *Sindell*'s market share theory nor *Summers*'s alternative theory of liability was applicable. It is from this judgment of dismissal that the appeal is taken.

### DISCUSSION

Preliminarily, we note that this appeal involves two separate actions that were instituted as class actions in Santa Clara County. They were later coordinated with similar cases filed in Contra Costa and Shasta Counties, and ultimately assigned to a coordination judge in Contra Costa County. However, no class has yet been certified.

■ In a product liability action, every supplier in the stream of commerce or chain of distribution, from manufacturer to retailer, is potentially liable. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] [manufacturer]; *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228 [71 Cal.Rptr. 306] [distributor]; *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168] [retailer].) "[T]he purpose for this 'stream of commerce'

approach to strict liability is to extend liability to all those engaged in the overall producing and marketing enterprise who should bear the social cost of the marketing of defective products. [Citation.] By extending liability to entities farther down the commercial stream than the manufacturer, the policy of compensating the injured plaintiff is preserved, and retailers and distributors remain free to seek indemnity against the manufacturer of the defective product." (*Kaminski* v. *Western MacArthur Co.* (1985) 175 Cal.App.3d 445, 456 [220 Cal.Rptr. 895].) Unlike negligence, in which the focus is on the conduct of the tortfeasor, strict liability focuses on the product itself and holds the manufacturer, et al., liable if the product is defective. (*Brown* v. *Superior Court* (1988) 44 Cal.3d 1049, 1056 [245 Cal.Rptr. 412, 751 P.2d 470].)

As a general rule, tort liability is dependent upon the plaintiff's ability to demonstrate that his or her damages were caused by the defendant, and this rule applies in strict liability as well as negligence cases. (*Sindell, supra,* 26 Cal.3d at pp. 597-598.)

## A. *Market Share Liability*

*Sindell* departs from the general rule requiring plaintiffs to identify the specific defendants whose conduct caused injury, and provides an exception to that rule under certain circumstances. The *Sindell* facts are well known. The *Sindell* plaintiffs were women who had developed cancer due to prenatal exposure to diethylstilbestrol (DES), a prescription drug designed to prevent miscarriage and which was utilized by their mothers for that purpose. DES was manufactured by several pharmaceutical companies from an identical formula. When plaintiffs were unable to determine which manufacturer supplied the DES ingested by their mothers, the court fashioned a market share theory of liability, permitting plaintiffs to join a substantial share of the manufacturers, and shifting the burden to the individual manufacturers to demonstrate they did not manufacture the drug causing plaintiffs' injuries.

■ The factual matrix of appellants' cases differs significantly from that of the *Sindell* plaintiffs. First, the *Sindell* plaintiffs were unable to identify the manufacturer of the defectively designed drug causing their injuries, and would have been without a remedy for extremely serious injuries absent market share liability. Appellants here know who manufactured the defective pipe, know who supplied the defective components from which it was manufactured, and also know the general contractor or builder who constructed their homes—indeed, their complaints allege that they have contacted either their individual developers or builders. Consequently, appellants have identifiable defendants, and are not otherwise without a remedy.

Second, *Sindell* dealt with a fungible product manufactured from the same formula, which was inherently defective for its intended purpose by reason of *design.* In contrast, appellants were not damaged by a fungible product uniformly manufactured from a common formula, and which is inherently unsafe due to its defective design. When properly manufactured, ABS pipe is fit for its intended purpose. Appellants were damaged by *manufacturing* defects occurring during a discrete time period by a single manufacturer. (See fn. 1, *ante.*) California courts have not imposed market share liability for nonfungible products (*Mullen* v. *Armstrong World Industries, Inc.* (1988) 200 Cal.App.3d 250 [246 Cal.Rptr. 32]) or defectively manufactured products which are not otherwise harmful for their intended purpose (*Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583 [192 Cal.Rptr. 870]). For these reasons alone we conclude market share liability is inapplicable here, and therefore we need not discuss the other reasons advanced by respondents for its nonapplicability.

## B. *Alternative Liability*

Alternative liability is the label for the burden-shifting rule of *Summers.* In *Summers,* the plaintiff was injured by shotgun pellets fired by one of two persons who negligently fired in plaintiff's direction during a hunting trip. Although plaintiff was unable to determine which of the named defendants fired the specific shot which struck him, the court held that since both defendants were negligent they were liable as joint tortfeasors, and the burden was imposed upon them to prove they did not cause plaintiff's injuries. The *Summers* court reasoned that without such a rule the plaintiff was without a remedy, and that the defendants were better able to provide evidence of causation. "If one can escape the other may also and plaintiff is remediless. Ordinarily defendants are in a far better position to offer evidence to determine which one caused the injury." (*Summers, supra,* 33 Cal.2d at p. 86.) ▮ *Summers* was based on a provision of the Restatement of Torts, which states: "Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by *only one* of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." (Rest.2d Torts, § 433B, subd. (3), italics added.)

Much of the rationale for application of the *Summers* rule is missing in cases where individual plaintiffs have identifiable defendants. Appellants have alleged generally that they are unable to determine which wholesaler supplied their particular plumbing contractors with the defective pipe, and are unable to identify the plumbing contractors who installed the pipe, their general contractors or their developers. However, appellants' general allegations advanced on behalf of a class which has not been certified, must give

way to the specific allegations regarding the individual litigants involved in this appeal. (See, e.g., *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520].) The individual appellants in this appeal specifically allege they not only have identified, but have contacted the developers and/or builders of *their* particular homes about the defective pipe, and do not allege any reason why the plumbing contractors that installed the pipe in their homes and the wholesaler from whom their plumbing contractors obtained the pipe cannot be identified. Consequently, in contrast to the *Summers* plaintiff, appellants are not without a remedy due to their inability to identify and join the responsible defendants.

DISPOSITION

The judgment is affirmed.

Peterson, P. J., and King, J., concurred.