**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANDRA BROWN COULBOURN, surviving wife and on behalf of decedent's surviving beneficiaries George Coulbourn Jr, Scott Alan Coulbourn and Shannon Coulbourn Moses, | No. 16-16925 |
| Plaintiff-Appellee, | D.C. No. 3:13-cv-08141-SRB |
| v. | MEMORANDUM* |
| CRANE CO., sued individually and as: successor in interest Cochrane Corporation successor in interest Chapman Valve Company successor in interest Deming Pump Company | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted March 15, 2018
San Francisco, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and RAKOFF,** Senior

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jed S. Rakoff, Senior United States District Judge for

District Judge.

George Coulbourn was a machinist for the Navy from 1959 to 1966, during which time he worked with several products sold by defendant-appellant Crane Company ("Crane") that contained significant amounts of asbestos. His work exposed him to dust from this asbestos, which he inhaled. Coulbourn was diagnosed with mesothelioma in September 2012 and passed away in August 2013. Coulbourn sued Crane, alleging, among other things, that Crane's products were defective in failing to warn of the dangers that asbestos posed. After his death, Coulbourn's wife, plaintiff-appellee Sandra Coulbourn, filed an amended complaint on behalf of herself and Coulbourn's family, asserting a claim for wrongful death based upon the same allegations of defect. Following trial, the jury awarded plaintiffs a total of $9 million in compensatory damages, with Crane bearing responsibility for 20%, or $1.8 million, of those damages, and $5 million in punitive damages against Crane. Defendant moved for judgment as a matter of law both before and after the verdict, and the district court denied both motions.

"We review de novo the grant or denial of a renewed motion for judgment as a matter of law. Such a judgment is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion,

_____

the Southern District of New York, sitting by designation.

and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). We review decisions on motions for a new trial for an abuse of discretion. *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010).

Crane first argues that plaintiffs failed to present sufficient evidence that its products were the but for causes of Coulbourn's death because he worked with many other products from other companies that also contained asbestos. However, under Arizona law, "when multiple tortfeasors are alleged to have created an indivisible injury and each defendant's causal role is potentially indeterminable, such causal uncertainty will not prevent a plaintiff from recovering altogether. The test under such circumstances is whether the defendant's actions were 'a substantial factor' in producing the injury." *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010) (citations omitted). An independently sufficient cause is a substantial factor even if it is not a but for cause because there were other independently sufficient causes. *See* Restatement (Second) of Torts § 432(2) (Am. Law Inst. 1965). Given the evidence of Coulbourn's frequent, direct contact with asbestos dust from Crane products during a substantial period, a reasonable juror could find that Crane products were more likely than not independently sufficient to cause his mesothelioma, and were thus a substantial factor in causing plaintiffs' injuries. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1176 & n.6 (9th Cir. 2016).

3

Crane next argues that there was insufficient evidence for plaintiffs' failure-to-warn theory to go to a jury because plaintiffs put forward no evidence that Coulbourn would have heeded a warning had Crane provided one. However, there was expert testimony and other evidence before the jury that asbestos causes mesothelioma — a painful, fatal disease. A jury could infer from this evidence that Coulbourn would have heeded an adequate warning of this serious danger.

Crane also challenges the sufficiency of the evidence supporting the jury's award of punitive damages. Plaintiffs argue that the award is justified because Crane, "although not intending to cause injury, . . . consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986). Plaintiffs adduced evidence of Crane's awareness as early as the 1930s that inhaling asbestos dust can be fatal, including, *inter alia*, a number of articles reflecting that finding that were published by organizations of which Crane officers were members. One of the principal Crane products with which Coulbourn worked was Cranite, which was composed of 75-85% asbestos and used to make gaskets, which were in turn used to seal joints between pipes and prevent leaks. As both Coulbourn and plaintiffs' naval engineering expert testified, the heat to which the gaskets were exposed in the course of their normal use invariably caused them to stick to the joints. Removing and replacing these gaskets was therefore part of the normal

maintenance of the ships, and when repairing or replacing the gaskets, which Coulbourn did every day while in certain roles, Crane employees such as Coulbourn had to scrape them off with wire brushes, which caused the interior asbestos dust to enter the air. A jury could reasonably infer from this evidence that Crane knew that the normal use of its gaskets would cause them to stick to the joints such that their inevitable removal would require scraping and so expose workers to potentially fatal asbestos dust. This is sufficient to justify punitive damages under Arizona law.

Crane also appeals the district court's denial of its motion for judgment as a matter of law on plaintiffs' claim for punitive damages, arguing that such damages are precluded by an Arizona statute barring punitive damages for products approved by a government agency. Arizona law bars punitive damages if the "product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government agency." Ariz. Rev. Stat. § 12-689(A)(1). However, Crane put forward no evidence that the Navy "approved" of its failure to warn of the dangers of asbestos. The Navy therefore had not approved of the product in the "relevant and material respect," as required under the statute.

Crane also argues that the imposition of punitive damages in this suit, and indeed in any single case arising out of a mass tort, will inevitably result in unconstitutional double punishment. The Supreme Court has held, in the context of another mass tort case, that, while juries cannot use punitive damages to punish the defendant for harms it caused to others, they may consider those harms to determine reprehensibility. *See Philip Morris USA v. Williams*, 549 U.S. 346, 354-55 (2007). Crane offers no evidence that the jury strayed from that obligation here.

Crane last contends that the punitive damages imposed are grossly excessive. The ratio of punitive to compensatory damages in this case is approximately 2.8 to 1. Although there is no safe harbor ratio for punitive damages, both the Supreme Court and this court have repeatedly held that ratios much higher than this are constitutionally permissible. *See, e.g.*, *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005) ("In cases where there are significant economic damages and punitive damages are warranted but behavior is not particularly egregious, a ratio of up to 4 to 1 serves as a good proxy for the limits of constitutionality."); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991). Crane has not shown that its conduct makes this award, which is well under 4 to 1, unconstitutional.

AFFIRMED.

6